**UNITED STATES of America, Plaintiff-Appellant,**

v.

**Takeo TERAOKA, Defendant-Appellee.**

**No. 81–1604.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Dec. 17, 1981.

Decided May 24, 1982.

Rehearing Denied May 24, 1982.

Herbert B. Hoffman, Sp. Asst. U. S. Atty., San Francisco, Cal., for the U. S.

James J. Brosnahan, Morrison & Foerster, San Francisco, Cal., argued, for defendant-appellee; Michael Brooks Carroll, Morrison & Foerster, San Francisco, Cal., on brief.

Before MERRILL and WRIGHT, Circuit Judges, and EAST,* District Judge.

MERRILL, Circuit Judge.

The United States has taken this appeal from order of the district court dismissing an indictment against Appellee Takeo Teraoka charging him with entering merchandise into the United States by means of a false statement in violation of 18 U.S.C. § 542.[1] The district court ruled that the alleged false statements were not material in that the merchandise had not been entered "by means of" such statements and that the indictment accordingly did not state a violation of § 542. The question presented is whether the court erred in so ruling. We hold that it did not.[2]

Under the Antidumping Act, 19 U.S.C. § 160 *et seq., as amended,* 19 U.S.C. §§ 1673–1677, whenever the Secretary of the Treasury determines that a class or kind of foreign merchandise is being or is likely to be sold in the United States at less than its fair value, he shall so advise the United States International Trade Commission which shall then determine whether an industry in the United States is being or is likely to be injured by such importation and report its determination to the Secretary. The Secretary thereupon makes findings as to such sale and such injury. 19 U.S.C. § 160. If the Secretary finds that the purchase price or foreign sales price of the merchandise is less than its foreign market value, a special dumping assessment must be levied and collected in an amount equal to the difference. 19 U.S.C. § 161.

To assist in implementing the Act as to imports of steel, the Secretary has established a "trigger price mechanism" (TPM) program. 43 Fed.Reg. 6065 (1978). A trigger price is the price necessary to cover the estimated production costs of efficient steel manufacturers. Under the program importers of steel products are required to submit to the Commerce Department a special steel summary invoice (SSSI) showing the price paid for such products. Where an SSSI indicates products imported for sale at less than the trigger price, the products are referred to Customs officials for possible full-scale investigation.

Appellee is a salesman for Mitsui & Co. (U.S.A.), Inc. which imports into the United States nails manufactured in Japan by its parent company Mitsui & Co. (Japan), Ltd. The indictment charges Appellee with engaging in a scheme whereby the TPM is avoided by fraudulent inflation of the purchase price. The transactions in question were sales of nails by Mitsui (U.S.A.) to Pacific Steel and Supply Co. (PSS). The mechanics of the scheme were simple: each time PSS contracted to purchase Mitsui nails at a specific price, a price premium was added to that price to create a nominal price at or above the applicable trigger

---

* Honorable William G. East, Senior United States District Judge, District of Oregon, sitting by designation.

1. § 542 Entry of Goods by Means of False Statements

  Whoever enters or introduces, or attempts to enter or introduce, into the commerce of the United States any imported merchandise by means of any fraudulent or false invoice, declaration, affidavit, letter, paper, or by means of any false statement, written or verbal, or by means of any false or fraudulent practice or appliance, or makes any false statement in any declaration without reason-able cause to believe the truth of such statement, or procures the making of any such false statement as to any matter material thereto without reasonable cause to believe the truth of such statement, whether or not the United States shall or may be deprived of any lawful duties; or . . .

  Shall be fined for each offense not more than $5,000 or imprisoned not more than two years, or both.

2. The court held that there were other reasons for dismissal of the indictment. These we need not reach.

price. This nominal price appeared on the invoice documents. PSS would then recoup the premium by filing a false damaged merchandise claim with Mitsui (U.S.A.) in the amount of the premium.

■ The district court ruled that unless it could be said that the false statements in the invoice documents had some relationship to the actual importation of the goods into the country, it could not be said that entrance of the goods had been "by means of" the false statement. We agree with that construction of § 542. The court then ruled that under the statute as so construed the nails had not been imported by means of a false invoice statement. Again we agree.

■ The protection established against dumping of foreign goods is not to deny entrance of goods or to impose terms upon which entrance is granted, but to impose a special duty on goods. As a result, the entry of the Mitsui nails at issue would not have been affected even had correct invoice prices been submitted showing the sale price to be less than the trigger price. The TPM then has no effect whatsoever on importation. It is a monitoring mechanism only intended to alert Customs officials to the likelihood that a special assessment may be called for.

The Government argues that the controlling question should be whether the false statements materially related to an important aspect of the importation process. It argues persuasively that Congress intended that true invoice prices should be material to that process.[3] This may well be so and Appellee might well have violated some other prohibition against making false statements as to material matters. He has not, however, entered goods into the United States by means of a false statement.

JUDGMENT AFFIRMED.

---

3. The Government relies on *United States v. Rose*, 570 F.2d 1358 (9th Cir. 1978), where this court held that since materiality of the false statement is an element of an offense under both § 542 and 18 U.S.C. § 1001, the Government could not cumulate penalties under both sections for the same statement. The Govern- ment reasons from this that the same standards of materiality should apply to both sections. We cannot agree. Under the clear language of § 542, the false statement must have significance not to any aspect of the importation process, but rather to the actual admission of the goods in question.